UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


<u>Bruce Belton</u>


     v.                          Civil No. 09-cv-345-JD
                                      Opinion No. 2010 DNH 113

<u>United States of America</u>


O R D E R

In June, 2006, a jury convicted Bruce Belton of unlawful possession of a firearm or ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1); possessing cocaine and methamphetamine with intent to distribute, in violation of 21 U.S.C. 841(a)(1) and (b)(1)(A); and possessing a firearm in furtherance of his drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A).  Belton received a sentence totaling 211 months in prison, followed by five years of supervised release.

On appeal, Belton argued that the court erred in denying his motion to suppress evidence, including drugs, weapons, and money, discovered during a search of his residence.  He also contended that the court violated the Speedy Trial Act.  The First Circuit affirmed the convictions in March, 2008.  <u>United States v. Belton</u>, 520 F.3d 80 (1st Cir. 2008).  On October 6, 2008, the Supreme Court denied Belton's petition for a writ of certiorari. <u>Belton v. United States</u>, 129 S. Ct. 286 (2008).

On October 9, 2009, Belton filed a pro se motion, pursuant to 28 U.S.C. § 2255, to set aside his conviction and sentence (Civ. doc. no. 1[1]).[2]  He also filed a memorandum in support of his motion (Civ. doc. no. 5).

One of the claims Belton has made in his motion is that his trial counsel, Attorney Paul Garrity, provided ineffective assistance.  In order to respond to this allegation, the government sought to have Belton waive the attorney-client privilege.  By order issued on February 23, 2010, Belton was directed to choose among three options regarding the privilege. See Civ. doc. no. 10.  Based on Belton's response to that order, the court determined that he implicitly chose to proceed with his § 2255 motion and not waive the privilege.  See Order dated March 25, 2010, Civ. doc. no. 13.  Belton has not filed any objection to the March 25 order.  Therefore, the court proceeds to review Belton's claims in this matter with a presumption that Attorney

---

[1]Docket entries in this pending civil case will be referred to with the abbreviation "Civ. doc. no."  Docket entries in the underlying criminal case, United States v. Belton, 04-cr-192-JD, will be referred to with the abbreviation "Crim. doc. no."

[2]Section 2255 imposes a one-year limitation period for filing a motion to vacate a conviction.  § 2255(f).  Although Belton filed his motion on October 9, 2009, more than one year after the Supreme Court denied certiorari, Belton also filed a motion to extend the time to file his legal brief in support of his petition.  The court granted the motion, extending Belton's deadline by thirty days.

Garrity's representation was not ineffective.  See, e.g.,
Chandler v. United States, 218 F.3d 1305, 1324 (11th Cir. 2000);
Alfano v. United States, 592 F. Supp. 2d 149, 160-61 (D. Me.
2008) ("A criminal defendant who challenges the adequacy of his
attorney's performance generally cannot invoke the attorney-
client privilege to bar his attorney from disclosing information
that relates to his claim. . . . If the [attorney's] decision was
strategic, the Court cannot evaluate its reasonableness without
knowing it.").

Background[3]

I.   Pre-Indictment Events

On June 30, 2004, Judge Brackett Scheffy of the Concord
District Court signed a warrant to search Belton's residence in
Franklin, New Hampshire.  See Civ. doc. no. 15, Exh. C at 1.
Several police officers executed the warrant on the same day.
Id.; Crim. doc. no. 1 at 4.  Also on that day, Magistrate Judge
Muirhead signed the criminal complaint, which alleged possession
with intent to distribute over fifty grams of methamphetamine and
possession of firearms by a felon.  Crim. doc. no. 1 at 1.  On

---

[3]Much of the background leading to Belton's prosecution was
included in the court's order denying his motion to suppress
evidence, and will not be repeated here.  See United States v.
Belton, 414 F. Supp. 2d 101 (D.N.H. 2006).

July 1, 2004, New Hampshire State Trooper James Geraghty returned the executed warrant to the Concord District Court.  Civ. doc. no. 15, Exh. C at 3.

Belton appeared before the magistrate judge on June 30, 2004, and his preliminary examination and detention hearing were scheduled for July 12, 2004.  See Crim. dkt. entries for 6/30/2004.  On July 13, 2004, Belton moved to continue his preliminary hearing "until [he] requests that the matter be scheduled," and the motion was granted.  Crim. doc. no. 6.  On the same day, the magistrate judge held Belton's detention hearing, and Belton was ordered detained pending trial.  See Crim. doc. no. 7.

On July 14, 2004, the parties jointly moved to extend the time to return an indictment against Belton, stating that they were "discussing the possible disposition of this case by pre-indictment plea agreement."  Crim. doc. no. 8.  The court granted the motion in the interest of justice, which extended the deadline to September 27, 2004.  The court also excluded the time from the date of the initial appearance, June 30, 2004, through September 27, 2004, for purposes of calculating deadlines under the Speedy Trial Act.

On September 23, 2004, the parties filed a second joint motion to extend the time to return an indictment.  They

4

reiterated that they were attempting to reach a pre-indictment plea agreement, which would conserve judicial, grand jury, and governmental resources.  Crim. doc. no. 9.  The court granted the motion in the interest of justice, and the deadline to indict was extended to October 28, 2004.  The time from the initial appearance through October 28 was excluded for purposes of Speedy Trial Act calculations.

II.  Indictment to Trial

Apparently unable to reach a plea agreement, the government filed the indictment against Belton on September 29, 2004.[4] Crim. doc. no. 10.  On October 4, 2004, the court held a hearing at which it scheduled Belton's arraignment for October 13, 2004. See Crim. dkt. entry for 10/4/2004.  The arraignment proceeded on that date, and Belton pleaded not guilty.  He sought reconsideration of the detention order, but the magistrate judge denied his motion because Belton was a convicted felon charged with drug and gun crimes who faced the possibility of a statutory

---

[4]The indictment alleged violations of the three crimes of which Belton was convicted, as well as conspiracy to distribute methamphetamine, in violation of 21 U.S.C. § 846.  The conspiracy count was dismissed at trial, upon an oral motion for judgment of acquittal.

life sentence.  Crim. doc. no. 11.  Trial was set to begin December 7, 2004.

On November 15, 2004, Attorney Garrity filed a motion to continue Belton's trial for ninety days because Garrity needed more time to prepare or negotiate with the government, and also because Garrity had three jury trials in state court that would occupy the week of December 6, 2004.  In his cover letter, Garrity stated that a "Waiver of Speedy Trial" was sent to Belton with an instruction to sign it and send it to the court.  The court did not receive the waiver, but granted the motion to continue in the interest of justice.  Crim. doc. no. 13.  The trial was rescheduled for the period beginning March 15, 2005.

On December 14, 2004, Belton filed a motion to suppress evidence seized and statements made pursuant to the June 30 search of Belton's home.  Crim. doc. no. 14.  The government indicated that it objected, but the Assistant U.S. Attorney handling the case, Joseph Laplante, stated that he would be out of the office from December 23 through December 31.  Crim. doc. no. 15.  The court ordered the government to file its written objection by January 14, 2005, which the government did.  Crim. doc. nos. 16, 17.  On that day, Belton's trial was also rescheduled to the period beginning March 1, 2005, two weeks earlier than the previous date.

A week later, on January 21, 2005, Garrity filed a motion to
continue the trial because he had a previously scheduled, prepaid
vacation outside of New Hampshire from February 24 to March 6.
Crim. doc. no. 18.  Garrity also stated that he would be on
vacation from March 17 to 20 and April 21 to May 1.  Once again,
Garrity's cover letter stated that a "Waiver of Speedy Trial" had
been sent to Belton and that Belton was instructed to sign it and
send it to the court.  The court granted the motion in the
interest of justice, rescheduling the trial to the period
beginning May 17, 2005.  The waiver was not received.

On March 23, 2005, Belton filed a pro se motion for a writ
of habeas corpus.  Crim. doc. no. 19.  He requested release on
bail because he had been arrested on June 30, 2004, and had never
agreed to waive his rights under the Speedy Trial Act.  The court
denied the petition on March 31, explaining that a motion to
suppress was pending and under review, two continuances were
granted at Belton's request, and his rights under the Speedy
Trial Act had not been violated.  Crim. doc. no. 21.

The court scheduled an evidentiary hearing on Belton's
motion to suppress for May 9, 2005.  In the meantime, on April
25, 2005, Belton filed a second petition for a writ of habeas
corpus, asking to be released on bail because of alleged
violations of the Speedy Trial Act.  Crim. doc. no. 23.  Belton

7

stated that Garrity requested a continuance on November 11, 2004, but that this was forty-three days after the Speedy Trial Act deadline had passed.  The court denied the motion because Belton's "motions to continue and the pending suppression motion result[ed] in excludable time."  Crim. dkt. entry for 5/2/2005.

On April 29, 2005, the government moved to continue trial until after June 22, 2005, because one of its most important witnesses, a former Vermont State Trooper, was in Iraq until that time.  Crim. doc. no. 24.  On May 11, 2005, Attorney Garrity filed an objection stating that Belton did not agree to the continuance but that Belton was, at that time, in intensive care at the hospital and would be there for at least three weeks. Crim. doc. no. 26.

Belton's health also caused the hearing on the motion to suppress to be postponed.  Belton was transported to court for a hearing on May 9, 2005, but while there, he became seriously ill and was then taken to Concord Hospital.  See Crim. dkt. entry for 5/11/05; Civ. doc. no. 15, Ex. A at 2.  The court issued a procedural order on May 11 explaining that an aneurysm on Belton's aorta had burst, and that he had received emergency surgery.  Crim. doc. no. 27.  The court found that Belton would clearly not be available for trial on May 17, and stated that the

motion hearing and trial would be rescheduled once the court received a report on Belton's condition.

The court held a scheduling conference on October 4, 2005, at which Garrity said that Belton was hospitalized outside of New Hampshire but that Garrity expected him to return soon.  Garrity also requested some time to meet with Belton to review the case upon his return.  See id.  The United States Marshals Service Custody/Detention Report for Belton shows that he was at Concord Hospital from May 9 to June 28, 2005, and that he was then transported to Just Care in South Carolina,[5] where he remained until October 5, 2005.  Civ. doc. no. 15, Ex. A at 2-3.

Following the October 4, 2005, scheduling conference, the court issued an order on October 13 reporting on Belton's status and scheduling the trial for December 6, 2005.  Crim. doc. no. 31.  The court noted that it "met with counsel on October 4, 2005, to discuss the scheduling of this case."  The court then reported that

---

[5]An internet search for the facility reveals that "Just Care, Inc. was established in 1998 as the nation's first private detention health care company."  See GEO Care, Inc. - Just Care, http://www.geocareinc.com/justcareinc.asp (last visited July 13, 2010).  Now called the Columbia Regional Care Center, it is "a 374-bed facility offering sub-acute, skilled, intermediate and hospice care for conditions such as AIDS, cancer, cardiac disease, and kidney dialysis, mental health, and special needs programs for detainees."  Id.

> [t]he defendant had not yet returned to the state of
> New Hampshire following his hospitalization.  Defense
> counsel indicated that he expects that the defendant
> would be returning soon and that he wanted the
> opportunity to meet with the defendant to review his
> case.
> Therefore, in the interest of justice, the trial of
> this matter is rescheduled to December 6, 2005.

Id.  On the following day, October 14, the hearing on the motion

to suppress was set for November 21, 2005.  Crim. dkt. entry for

10/14/2005.  On November 3, Garrity asked for a one-day

postponement due to a hearing in state court.  Crim. doc. no. 32.

The hearing was ultimately held on November 28, 2005.

At that hearing, Garrity raised an issue with the search

warrant under Franks v. Delaware, 438 U.S. 154 (1978).  Crim.

dkt. entry for 11/28/2005; Suppression Hearing Trans. I at 2.

The parties requested permission to submit additional briefing on

the Franks issue, and acknowledged that doing so would delay the

trial.  Garrity stated that he had spoken to Belton about the

scheduling and that Belton "understands that this stuff has to be

litigated before we get to trial."  Supp. Tr. I at 19-20.  After

additional arguments by counsel, the court said, "I would say any

December trial date is out," to which Garrity responded, "I

believe Mr. Belton understands that, Judge."  Id. at 35.  The

court then engaged in a colloquy with Belton:

> THE COURT:  Do you understand that, Mr. Belton?
> That in order to address this issue, it will be

10

necessary to continue your trial, to reschedule it?  Do you understand that?

    MR. BELTON:  Yes, I understand.

    THE COURT:  All right.  And you're willing to have the case rescheduled so that the Court can address this issue?

    MR. BELTON:  Well, yes and no, but I guess it has to be.

Id. at 35-36.  The court then continued the trial in the interest of justice and required briefing on the Franks issue to be completed by December 22.  Id. at 36.

Once the briefs were submitted, the court set an evidentiary hearing for January 4, 2006.  The hearing was held and the court issued an order denying the motion to suppress on January 30, 2006.  Crim. doc. no. 42.  Trial was scheduled for the period beginning April 18, 2006.

On March 14, 2006, Garrity filed a motion to continue trial for sixty days due to his prepaid vacation plans out of state from April 21 to 30.  Garrity stated that a Waiver of Speedy Trial would be mailed under separate cover.  The court did not receive a waiver, but granted the motion in the interest of justice, setting the trial for the period beginning June 6.  Crim. dkt. entry for 3/15/2006.

Jury selection took place on June 6, 2006.  Arguments and evidence were presented on June 22, 23, and 26, and the guilty verdicts were returned on June 26, 2006.

## Standard of Review

Section 2255 allows a prisoner in federal custody to move for relief from his conviction and sentence on grounds "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  A prisoner is barred, however, from raising most claims in his § 2255 motion if he did not raise the claims at trial or on direct review.  Owens v. United States, 483 F.3d 48, 56 (1st Cir. 2007).  Such new claims may be heard on collateral review only if the prisoner can show cause for his procedural default and actual prejudice that resulted from the errors.[6]  Id. (citing United States v. Frady, 456 U.S. 152, 168 (1982)).  Moreover, "issues disposed of in a prior appeal will not be reviewed again by way of a 28 U.S.C. § 2255 motion."

---

[6]A prisoner can also overcome procedural default by showing that he is actually innocent.  Owens, 483 F.3d at 56, n.6 (citing Bousley v. United States, 523 U.S. 614, 622 (1998)).  Belton does not attempt to do so.

<u>Singleton v. United States</u>, 26 F.3d 233, 240 (1st Cir. 1994)
(internal quotation marks, alterations, and citation omitted).

Where no evidentiary hearing is held on a § 2255 motion, the
court "take[s] as true the sworn allegations of fact set forth in
the petition unless those allegations are merely conclusory,
contradicted by the record, or inherently incredible."  <u>Owens</u>,
483 F.3d at 57 (internal quotation marks and citation omitted).


Discussion

Belton raises a variety of claims in support of his § 2255
motion, including claims that Attorney Garrity's representation
was ineffective and that the criminal proceedings against Belton
were plagued by prosecutorial misconduct.


I.    <u>Ineffective Assistance of Counsel</u>[7]

Belton argues that Attorney Garrity's representation was
ineffective for a number of reasons.  Belton faults Garrity for
failing to object to the trial court's exercise of jurisdiction,

---

[7]Although Belton did not raise his ineffective assistance of
counsel claims on direct appeal, they are not procedurally
defaulted because "collateral attack is the preferred forum for
such claims."  <u>Knight v. United States</u>, 37 F.3d 769, 774 (1st
Cir. 1994).  "[F]ailure to raise an ineffective-assistance-of-
counsel claim on direct appeal does not bar the claim from being
brought in a later, appropriate proceeding under § 2255."
<u>Massaro v. United States</u>, 538 U.S. 500, 509 (2003).

improperly delaying trial, and failing to raise violations of Belton's speedy trial rights.  Belton also alleges that Garrity did not provide Belton's criminal files on demand, failed to relay a plea offer, and failed to introduce exculpatory witnesses and cross-examine certain prosecution witnesses.  Belton further asserts that Garrity's representation was ineffective because he did not raise a challenge under Bailey v. United States, 516 U.S. 137 (1995), did not challenge Belton's competence to stand trial, and did not appeal all appealable issues.

"The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect."  United States v. De La Cruz, 514 F.3d 121, 140 (1st Cir. 2008) (citing Kimmelman v. Morrison, 477 U.S. 365, 374) (1986)).  "To succeed on a claim of ineffective assistance of counsel under the Sixth Amendment, [the petitioner] must show both deficient performance by counsel and resulting prejudice."  Peralta v. United States, 597 F.3d 74, 79 (1st Cir. 2010) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)).  To satisfy the performance prong, the petitioner must show that his representation at trial "fell below an objective standard of reasonableness," analyzing the attorney's efforts "under prevailing professional norms."  Strickland, 466

14

U.S. at 688.  "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." Kimmelman, 477 U.S. at 381.  "Judicial scrutiny of counsel's performance must be highly deferential. . . . [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.  In addition, as discussed above, because Belton did not waive his attorney-client privilege, the court will presume that Garrity's representation was not ineffective.

To satisfy the prejudice prong, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.  The court need not address both prongs, however, because "if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." Malone v. Clark, 536 F.3d 54, 64 (1st Cir. 2008) (internal quotation marks omitted).

A.   <u>Jurisdiction</u>

Belton contends that Attorney Garrity provided ineffective assistance because he failed to challenge the district court's jurisdiction.  Belton argues that Garrity should have done so because Belton was arrested by state authorities pursuant to a state court search warrant, and detained in a "state/county" facility, but was never brought to state court to make an initial appearance or to enter a plea.[8]

---

[8]Belton also appears to raise the jurisdiction issue as a separate ground for the § 2255 motion.  <u>See</u> Civ. doc. no. 1 at 6. To the extent Belton intended to raise the issue on its merits, rather than as the basis for his ineffectiveness claim, the claim is procedurally defaulted.  As explanation for his default, Belton states only that, "[p]racticing [d]ue diligence the facts and evidence could not be proven 'til now.  I am a layman of the law and cannot function at 100%."  Not only is this explanation insufficient to explain why Belton did not raise these issues at trial or on direct appeal, but it also does not refer to any actual prejudice that Belton suffered.  The same analysis applies to a number of other issues to which Belton refers, without development, in his motion, including his allegations that: 1) the prosecution "advised and supervised this case before probable cause"; 2) Belton was "never afforded the right to wa[i]ve jurisdiction or extradition to another jurisdiction; 3) he was "never offered a plea agreement to any court"; 4) Belton was not served with "authoritative papers to declare pending prosecution"; and 5) prosecutorial misconduct.  Even if the claims were not procedurally defaulted, the court could not review them on their merits because they are undeveloped and conclusory.  Where a petitioner's "allegation is conclusory and does not state facts indicating that [the allegation is true, it] states no ground for relief."  <u>Shraiar v. United States</u>, 736 F.2d 817, 818 (1st Cir. 1984).

Belton cites no authority for his assertion that the district court lacked jurisdiction, or that his federal or state rights were in any way violated by the procedure that was followed in his case.  Belton was convicted of three counts, each of which was a violation of a federal law.  "The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against laws of the United States."  18 U.S.C. § 3231; see also Prou v. United States, 199 F.3d 37, 45 (1st Cir. 1999) ("a federal district court plainly possesses subject-matter jurisdiction over drug cases").  Because the court had jurisdiction over the case, it was not unreasonable for Garrity not to raise the issue.

Belton's allegations about improper procedure are equally unavailing.  The state court issued a search warrant for Belton's residence on June 30, 2004.  The record reflects that there was no arrest warrant, nor was there ever any criminal proceeding against Belton in state court.  State troopers executed the warrant, and after discovering approximately thirteen ounces of methamphetamine, three handguns, a triple-beam scale, $40,479 in cash, and paraphernalia of the Freelancers outlaw motorcycle gang, they took Belton into federal custody.  Crim doc. no. 1. Belton was brought before a magistrate judge for his initial appearance on the same day, in accordance with Federal Rule of

Criminal Procedure 5(a).  Also on June 30, a complaint establishing probable cause was filed in this court, in accordance with Rule 5(b).  The state search warrant was returned, executed, to the issuing court.  Because the procedure followed by the state and federal law enforcement and judicial officers was proper, it was reasonable for Attorney Garrity not to object on that ground.

B.   Improper Delays

Belton also alleges that Garrity provided ineffective assistance because he was aware that Belton wanted to proceed quickly to trial, but Garrity delayed the trial for personal reasons.[9]  Relatedly, Belton argues that Garrity filed fraudulent motions for extensions of time and continuances, on which Belton's signature was forged.

Turning first to the issue of Belton's signature, a review of the motions does not reveal any apparent forgeries.  The motions for continuances and extensions of time that were filed

---

[9]Belton also appears to allege a violation of the Speedy Trial Act as a stand-alone claim, although he refers to the "Fair Trial Act and constitutional issues."  He gives no citation for the "Fair Trial Act," but he discusses the scheduling in his case, so the court assumes Belton intended to refer to the Speedy Trial Act of 1974.  This claim was raised on appeal and denied. See Belton, 520 F.3d at 81.  As discussed above, arguments raised and decided on appeal are barred from collateral review.

by Garrity (or by him jointly with the government) were signed by Garrity alone, as counsel for Belton.[10]  See Crim. doc. nos. 8, 9, 12, 18, 29, 32, 35, 44.  There was no representation that the signature belonged to Belton and therefore the forgery claim is without merit.

Garrity was also not ineffective when he filed motions for extensions.  Garrity's requests for extensions were not unreasonable.  Requests for more time to prepare a lengthy motion to suppress, to negotiate with the government, and to confer with Belton after his illness were undoubtedly in Belton's best interest, because those actions potentially could have improved Belton's outcome significantly.  Garrity also requested continuances due to conflicting obligations to appear in state court, as well as in order to take his prepaid vacations, which totaled fifteen weekdays during 2005.  These requests, too, are not unreasonable or unprofessional.  Moreover, Belton does not explain what prejudice resulted from the extensions, other than that Belton's desire to proceed more quickly to trial was not fulfilled.  This prejudice is insufficient to establish

---

[10]Belton and Garrity both signed the July 13, 2004, motion to continue the preliminary hearing.  The signatures on that document and his two habeas petitions, as well as all the documents Belton has filed in this civil case, are clearly the same.  See Crim doc. nos. 6, 19, 23; Civ. doc. nos. 1, 5, 11, 12, 16.

ineffective assistance, which requires a showing that the result of the proceeding would have been different.

Belton's remaining arguments regarding the delays address his rights to a speedy trial under the Speedy Trial Act and the Sixth Amendment.

### 1.   Speedy Trial Act

Belton appears to allege that Garrity's representation was unreasonable because he failed to protect Belton's rights under the Speedy Trial Act, 18 U.S.C. § 3161, et seq.  The statute provides that a defendant's trial "shall commence within seventy days from the filing date . . . of the . . . indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs."  § 3161(c)(1).  Certain periods of time are excluded when calculating the deadline, including "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion."  § 3161(h)(1)(D).  "Any period of delay resulting from the fact that the defendant is . . . physically unable to stand trial" is also excluded.  § 3161(h)(4).

a.   Performance Prong

The indictment against Belton was filed on September 29, 2004, so the Speedy Trial clock began to run on September 30. Belton's trial began on June 6, 2006, more than twenty months later.  Much of the time is excludable by statute, however.

The first excludable period began on November 15, 2004, when the court granted Belton's motion to continue his December 7, 2004, trial date for ninety days.  Garrity gave two reasons for the continuance: he needed "additional time in order to prepare for trial or negotiate further with the United States Attorney's Office," and he had three jury trials in state court that would begin December 6, 2004, and last through the week.  The court granted the motion in the interest of justice.  Under the Speedy Trial Act, "the delay resulting from a continuance granted by any judge . . . at the request of the defendant or his counsel," is excluded from the seventy-day deadline if the judge grants the continuance in the interest of justice.  § 3161(h)(7)(A).  Such a motion may be granted if it is based on affording the defendant "continuity of counsel," or where the defense attorney requests "reasonable time necessary for effective preparation."  § 3161(h)(7)(B)(iv).  Because the Act explicitly excludes delays caused by both reasons cited by Garrity, the Speedy Trial clock was stopped from the date of the motion through the new trial

date, March 15, 2005.[11]   <u>Cf. United States v. Barnes</u>, 159 F.3d 4, 11 (1st Cir. 1998) (excluding time beginning on date motion to extend time was filed).

A second period of excludable time, which overlapped with the first period, began on December 14, 2004, when Belton filed his motion to suppress evidence seized and statements made during the June 30 search of Belton's home.   See § 3161(h)(1)(D) (delay

---

[11]The fact that the court did not state the reasons for granting the continuance in its March 15 order does not render it in conflict with the requirements of the Speedy Trial Act. Although it is "the far better course for the district court . . . to articulate its reasons for granting [an] 'ends of justice' continuance[]," it is not necessary to do so when the facts underlying the court's order "are obvious and set forth in a motion for a continuance."   <u>United States v. Pakala</u>, 568 F.3d 47, 60 (1st Cir. 2009) (internal quotation marks and citation omitted).

Although Belton did not file a waiver of his Speedy Trial Act rights and, according to his § 2255 motion, did not agree to Garrity's filing the motion to continue, when such a motion is granted, the Speedy Trial deadline is tolled even if the client does not agree.   <u>See</u> <u>United States v. Gates</u>, 650 F. Supp. 2d 81, 84-85 (D. Me. 2009) (citing cases); <u>cf.</u> <u>New York v. Hill</u>, 528 U.S. 110, 115 (holding that, in the context of the trial deadline in the Interstate Agreement on Detainers, defense counsel's agreement to delay trial bound his client because "[s]cheduling matters are plainly among those for which agreement by counsel generally controls," and "only counsel is in a position to assess the benefit or detriment of the delay to the defendant's case"). <u>But see</u> <u>Bloate v. United States</u>, 130 S.Ct. 1345, 1357-58 (2010) (stating in dicta that "a district court may exclude . . . time under subsection (h)(7) if it grants a continuance . . . based on recorded findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial")(internal quotation marks omitted).

resulting from pretrial motions).  The government filed a brief
objection to the motion on December 22, stating that AUSA
Laplante would be out of the office from December 23 to 31, but
that the government would file its memorandum in opposition well
before any scheduled hearing on the motion.  Crim. doc. no. 15.
The next day, the court issued a procedural order requiring the
government to "file a written objection to the defendant's motion
to suppress by January 14, 2005," and to "provide the court with
a copy of the warrant in question when it files its objection."
Crim. doc. no. 16.  The order further stated that, "[a]fter the
court has reviewed the motion and the objection, the court will
determine whether or not a hearing is necessary."  Id.

In compliance with the procedural order, the government
filed its opposition to the motion to suppress on January 14,
2005, and attached the affidavit of Trooper Geraghty in support
of the search warrant application.  Crim. doc. no. 17.  One week
later, on January 21, Garrity filed an assented-to motion to
continue trial from March 1 to May 17, 2005, due to a scheduled
trial in federal court on March 1, prepaid vacation plans outside
New Hampshire from February 24 to March 6, and vacation from
March 17 to 20 and April 21 to May 1.  Crim. doc. no. 18.  The
motion was granted in the interest of justice, and the trial was

scheduled for the two-week period beginning May 17, 2005.  Crim. dkt. entry for 1/21/2005.

The court took the motion to suppress, the objection, and the affidavit in support of the warrant under advisement.  Each of the documents was extensive and required careful review.  On April 6, 2005, the court issued a procedural order noting that, "[i]n response to the defendant's motion to suppress, the government in its objection has invoked the good faith exception and having done so has the burden on that issue."  Crim. doc. no. 22.  The court ordered an evidentiary hearing to be scheduled on the issue of the good faith exception.  See id.  The same day, the hearing was set for May 9, 2005.  Crim. dkt. entry for 4/6/2005.  The period from the filing of the motion, December 14, 2004, through the original hearing date, May 9, 2005, was excludable under under § 3161(h)(1)(D).

Although the parties arrived at the courthouse on May 9, the hearing had to be postponed indefinitely because Belton became seriously ill before the hearing began.  Thus, the period from May 9, when Belton was taken to Concord Hospital, to November 21, 2005, the new date for the motion hearing, was excludable because Belton was "physically unable to stand trial."  § 3161(h)(4).  It was also excludable under § 3161(h)(1)(D), because the motion to suppress was still pending.

24

At the hearing, which was held November 28, Garrity raised the _Franks_ issue, and suggested that the parties submit supplemental briefings. Supp. Tr. I at 2. The government agreed that briefs were necessary. _Id._ at 19. Garrity requested two weeks to prepare his brief, so the court set a deadline of December 12, and required the government to submit a response by December 22. _Id._ at 35-36. It was also necessary to have an additional hearing on January 4, 2006, rendering the period until the hearing excludable under § 3161(h)(1)(D). Finally, the period from January 4 to January 30, 2006, was excludable as "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court." § 3161(h)(1)(H).

A third period of excludable delay, which overlapped with the second period, began on November 28, 2005, when the parties acknowledged, at the first suppression hearing, that it would be impossible to go to trial in early December because they intended to file memoranda on the _Franks_ issue. Garrity stated that he believed Belton understood the need for a delay. When the court asked Belton whether he was willing to have the case rescheduled so that the court could address the _Franks_ issue, Belton responded, "Well, yes and no, but I guess it has to be." Supp. Tr. I, at 36. The court then found that it was in the interest

of justice to continue the trial, and announced that it would be
"rescheduled as soon as possible after this issue has been
resolved." Id.  The issue was ultimately resolved in the court's
January 30, 2006, order, and the trial was rescheduled for the
period beginning April 18, 2006.  Thus, the parties'
acknowledgment at the suppression hearing that the trial would be
continued, coupled with Belton's oral acceptance of that fact,
rendered the time from November 28, 2005, through April 18, 2006,
excludable.[12]

Finally, a fourth period of excludable delay, which
overlapped with the third period, began on March 14, 2006, when
Garrity filed a motion to continue the trial for sixty days,
because he had prepaid vacation plans outside New Hampshire from
April 21 to April 30.  The court granted the motion, in the
interest of justice, on the following day.  Such a scheduling
conflict is a legitimate basis for a continuance under §

_____

[12]Generally, it is "preferable to limit a continuance to a
definite period for the sake of clarity and certainty," but in
some cases it is not possible.  United States v. Rush, 738 F.2d
497, 508 (1st Cir. 1984).  In this instance, the court could not
be sure when the motion would ultimately be decided, and thus
could not set a trial date until the January 30, 2006, order was
issued, at which time the trial was scheduled for April 18, 2006.
See also United States v. Richardson, 421 F.3d 17, 30 n.15 (1st
Cir. 2005) (finding no authority "for the proposition that a
trial date must first be set before a court may grant a
continuance in the proceeding") (internal quotation marks and
citation omitted).

3161(h)(7)(A) and (h)(7)(B)(iv), because the continuance preserves the defendant's continuity of counsel.  See Barnes, 159 F.3d at 12 (excluding time when defense counsel was unavailable "due to conflicts with his work and personal schedules"). Therefore, Garrity's motion tolled the Speedy Trial deadline from the date of the motion through June 17, 2006, sixty days after the previously scheduled trial date.

In sum, the Speedy Trial clock did not run during the entire period from November 15, 2004, through the beginning of trial, on June 6, 2006.  The only includable days were the forty-six days from September 30 through November 14, 2004.  Therefore, Belton's rights under the Speedy Trial Act were not violated and there was no basis for Garrity to object or otherwise preserve the issue. Belton cannot meet his burden with regard to the Strickland performance prong.

### b.   Prejudice Prong

Even if it had been unreasonable for Garrity not to move for a dismissal of the indictment under the Speedy Trial Act, Belton has not shown that this omission caused any prejudice.  Under the Act, if the seventy-day time limit is exceeded, the "indictment shall be dismissed on motion of the defendant."  18 U.S.C. §

3162(a)(2).  Such a dismissal may be either with or without
prejudice.

     "In determining whether to dismiss the case with or without
prejudice, the court shall consider, among others, each of the
following factors: the seriousness of the offense; the facts and
circumstances of the case which led to the dismissal; and the
impact of a reprosecution on the administration of this chapter
and on the administration of justice."  Id.  Dismissing a case
with prejudice is "a last and rare resort."  United States v.
Dessesaure, 556 F.3d 83, 85 (1st Cir. 2009).

### i.  Seriousness of the Offense

     In Belton's case, the offenses with which he was charged,
possession of a firearm by a convicted felon, conspiracy to
distribute methamphetamine, possession of methamphetamine and
cocaine with intent to distribute, and possession of a firearm in
furtherance of a drug trafficking crime, were very serious.  In
Dessesaure, the defendant faced essentially identical charges,
and the First Circuit held that their seriousness weighed heavily
in the Speedy Trial Act dismissal calculus.[13]  556 F.3d at 86.

---

[13]Dessesaure was charged with the three offenses of which
Belton was ultimately convicted; Dessesaure's indictment did not
include a conspiracy count.  556 F.3d at 84, n.1.

28

"The combination of drug trafficking and guns has imposed a grim toll on society." Id.  "The graver the crimes, the greater the insult to societal interests if the charges are dropped, once and for all, without a meaningful determination of guilt or innocence." United States v. Hastings, 847 F.2d 920, 925 (1st Cir. 1988).  Where a defendant is charged with drug and firearm violations, the "severity prong points directly toward dismissal without prejudice." Id.

### ii.  Circumstances Leading to Dismissal

Belton points to no bad faith on the part of the government in delaying trial, and the court finds none in the record.  The majority of the motions for continuances and extensions were filed by Garrity, or by Garrity jointly with the government.  The only request by the government alone was for a continuance, from May 17 to June 22, 2005, due to the fact that an important witness was in Iraq.  The requested delay was only a little over a month and was caused by circumstances outside the government's control.

### iii. Administration of Justice

The administration of the Speedy Trial Act would be undermined if all dismissals were without prejudice because the

29

parties would have little, if any, incentive to enforce the Act. The Act's aims of promptly resolving criminal charges for the sake of the defendant as well as the public would not be served. See Dessesaure, 556 F.3d at 85.  On the other hand, "the strongest argument against re-prosecution is prejudice to the defendant--most importantly, loss of witnesses or other impediments to obtaining a fair trial at a later date."  Id. at 86.  Belton has made no showing that he suffered prejudice at trial from such a delay.  He did not even allege, let alone demonstrate, that delay prevented any witness favorable to him from testifying.  Furthermore, he failed to demonstrate any other impediment that occurred to prevent a fair trial.

Given the presumption against dismissing without prejudice, and the analysis of the statutory factors in Belton's case, it is highly unlikely, even if the court granted a motion to dismiss due to a violation of the Speedy Trial Act, that such a dismissal would have been with prejudice.  Thus, Belton in all probability would have been re-indicted, re-tried, and convicted, just as he was at his 2006 trial.  Because Belton has not shown that the outcome would be different, he has not shown that Garrity provided ineffective assistance of counsel when he failed to raise Belton's Speedy Trial Act rights at trial.

2.   <u>Sixth Amendment</u>[14]

Belton also alleges that Garrity provided ineffective
assistance because he failed to protect Belton's constitutional
right to a speedy trial.  The Sixth Amendment provides that,
"[i]n all criminal prosecutions, the accused shall enjoy the
right to a speedy and public trial."  U.S. Const. amend. VI.  The
Supreme Court has instructed that courts should assess four
factors to determine whether a defendant's right to a speedy
trial was violated: "[l]ength of delay, the reason for the delay,
the defendant's assertion of his right, and prejudice to the
defendant."  <u>Barker v. Wingo</u>, 407 U.S. 514, 530 (1972).

a.   <u>Length of Delay</u>

Unlike under the Speedy Trial Act, "[t]he Sixth Amendment
right to a speedy trial attaches upon formal accusation," which
usually "means either arrest or indictment, whichever comes
first."  <u>United States v. Dowdell</u>, 595 F.3d 50, 61 (1st Cir.
2010).  Belton was arrested on June 30, 2004, so the delay in his
case was just under two years, from his arrest until his trial,
on June 6, 2006.  Delay that "approaches one year" is

---

[14]To the extent Belton intended to argue, as a stand-alone
claim, that his Sixth Amendment right to a speedy trial was
violated, the claim fails for the same reasons set forth within.

presumptively prejudicial.  <u>Id.</u> (citing cases).  Therefore, this factor weighs in Belton's favor.

>       b.   <u>Reason for Delay</u>

The second factor, the reasons for the delay, is "the focal inquiry."  <u>United States v. Muñoz-Franco</u>, 487 F.3d 25, 60 (1st Cir. 2007) (internal quotations omitted).  "The inquiry into causation involves a sliding scale: deliberately dilatory tactics must be weighed . . . heavily against the [government]," but "to the extent that valid reasons cause delay, the delay does not count against the [government] at all.  So too delay that is caused by the defendant."  <u>Rashad v. Walsh</u>, 300 F.3d 27, 34 (1st Cir. 2002) (citing <u>Barker</u>, 407 U.S. at 531).

As discussed above, the reasons for delay were almost entirely due to motions filed by Garrity on Belton's behalf and Belton's illness.  The government filed only one motion to continue trial, which requested just over a month delay due to the unavailability of a witness.  The government caused very little delay and did not do so in bad faith.  The second <u>Barker</u> factor weighs against Belton.

c.    Defendant's Assertion of His Right

The third factor, the defendant's assertion of his right to a speedy trial, weighs in Belton's favor to the extent that he personally filed two petitions for a writ of habeas corpus alleging that his right under the Speedy Trial Act had been violated.

d.    Prejudice

The fourth factor, prejudice to the defendant, "should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect." Barker, 407 U.S. at 532. The Supreme Court has enumerated three such interests: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." Id. The third of these interests is the most serious. Id.

Belton was in custody from his arrest to trial. This clearly implicates the first interest, preventing oppressive incarceration. "Lengthy detention is not necessarily, however, sufficient to establish a constitutional level of prejudice." United States v. Casas, 425 F.3d 23, 34 (1st Cir. 2005) (internal quotation marks, alteration, and citation omitted). Like the defendants in Casas, Belton has not shown that the conditions of

33

his confinement were unduly oppressive,[15] and most of the delay during his pretrial detention was attributable to Belton.

Belton does not allege that the delay caused him anxiety or concern, although he did suffer severe medical problems during the pendency of his case.  He does not, however, attempt to show that these medical problems would not otherwise have occurred. Belton alleges that he was and still is in an "emotional state of mind," and that when Garrity visited him to discuss his case after his May 11 collapse, Belton "wa[]ved Mr. Garrity away from me [a]s I wanted to live not die in a worry."  Although Belton alleges that he suffered psychologically, he does not attribute it to delay, as opposed to preexisting medical conditions and the mere fact that he was facing very serious drug and firearm charges.  See Casas, 425 F.3d at 35 ("considerable anxiety

---

[15]Belton did complain about the conditions of his confinement at sentencing.  He stated that the medical care was inadequate and that the food he received caused him to develop diabetes.  His presentence report, however, states that before his arrest Belton was taking medication for suspected type-II diabetes.  Belton's Custody/Detention Report shows that between his arrest and trial, Belton visited multiple healthcare facilities and underwent a variety of diagnostic procedures, including a tibia-fibula x-ray, debridement of skin tissue, eye exam, knee x-ray, arthritic screen, emergency surgery, multiple chest x-rays and CT scans of his abdomen, a lengthy hospital stay, electrocardiogram, non-tunnel CV catheterization, incision of his windpipe, and other outpatient visits.  See Civ. doc. no. 15, Ex. A at 4-5.

normally attends the initiation and pendency of criminal charges;
hence only undue pressures are considered") (internal quotation
marks and citation omitted).

The third enumerated interest, to limit impairment of the
defense, is not implicated in this case.  Belton does not suggest
that his defense was impaired by the delay, and in fact, much of
the delay was caused by his motion to suppress and his serious
health problem that led to his hospitalization.  That portion of
the delay that occurred due to his motion to suppress had the
important potential to help, rather than hinder, Belton's
defense.

In sum, the first and third <u>Barker</u> factors weigh in Belton's
favor.  The First Circuit instructs that the court should focus
on the second factor, which weighs against Belton.  The fourth
factor also weighs somewhat against Belton.  Therefore, the court
finds that Belton's Sixth Amendment right to a speedy trial was
not violated, and Garrity's failure to raise the issue did not
fall below any objective standard of reasonableness.

### C.   <u>Criminal Files & Plea Agreement</u>

Belton contends Garrity's representation was ineffective
because he has repeatedly asked Garrity for his files related to
Belton's criminal case, but Garrity was slow to respond and

35

retains possession of 100 pages of the file.  Once Belton finally received some portion of his case file, he claims that he became aware for the first time of a plea agreement that the prosecution offered, but that Garrity never relayed to Belton.

With respect to the documents that Belton claims Garrity has not produced, Belton fails to identify what those documents are, how those documents would have aided his criminal case, or how he was prejudiced by Garrity keeping the documents rather than giving them to Belton.  Without knowing the content of the missing pages, the reasonableness of Garrity's actions and the existence of any resulting prejudice cannot be determined.

Belton also complains that it took persistent nagging to get the portion of his file that Garrity did send.  Belton does not explain what this means, or how long Garrity delayed.  Belton also does not allege that he requested the file during the pendency of his criminal case.[16]  The paucity of facts supporting this allegation of ineffectiveness renders it meritless.

---

[16]The record suggests that Belton asked for the file after the conclusion of his criminal case.  On March 5, 2009, he wrote a letter to Garrity explaining his plan to file a § 2255 motion and asking for "all the paperwork from my case no# 04-CR-192-01-JD."  Crim. doc. no. 90.  Notably, Belton did not suggest in the letter that he had previously asked Garrity for the file, as he did in a later letter to Garrity.  Crim. doc. no. 92.  If Belton first asked for his file after his criminal case ended, then even if it were unreasonable to delay production of the file, doing so could not have changed the outcome in Belton's criminal case.  Thus, the prejudice prong could not be satisfied.

Belton also alleges that the prosecution offered a plea deal that Garrity never related to his client.  "A defendant has a right to be informed by his counsel of a plea offer," and "[o]rdinarily, counsel's failure to do so constitutes ineffective assistance of counsel."  <u>United States v. Rodriquez Rodriquez</u>, 929 F.2d 747, 752 (1st Cir. 1991).

Attached to his motion, Belton included a copy of an August 18, 2004, email from AUSA Laplante to Garrity, in which Laplante stated:

> My proposal: For PRE INDICTMENT plea to an information alleging poss w/intent to dist. quantity of meth and felon in possession of 3 guns.  5 year minimum b/c of drug felony prior under 21 USC 841(b)(1)(C) and 851. [Base Offense Level] . . . 27.  Category I probable, 70-87 months. . . . Possibility of 2 point bump on drug BOL b/c of the guns. . . . You're free to argue it, or anything else.  Reason for concessions: search issues.

Civ. doc. no. 1, Ex. 6.[17]  The government represents that its file does not contain the email Belton attached to his motion, or any response from Garrity.  Generally, where a colorable accusation has been made that a defense attorney failed to tell his client about a plea offer, a hearing should be held to determine whether the allegations are true.  Here, however, Belton has refused to allow Garrity to testify about the

---

[17]The documents attached to Belton's motion are not numbered sequentially.  The August 18, 2004, email is the sixth of nine attachments.

allegations, so the court must decide Belton's claim on the basis of the existing record.

The date of the email reflects that it was sent in the middle of the parties' attempts to reach a plea deal before an indictment was returned.  Belton was arrested June 30, 2004, and ordered detained pending trial on July 13, 2004.  The next day, the parties requested that the deadline to return an indictment be extended because they were attempting to reach an agreement. Crim. doc. no. 8.  The indictment was eventually returned on September 29, 2004.

The parties were apparently negotiating during the pre-indictment period from approximately the beginning of July through the end of September.  AUSA Laplante's email was sent August 18, so it likely reflects an ongoing discussion between him and Garrity.  The government can shed no light on the email or its context.  It is clear from Garrity's time records, which were included as part of the CJA voucher he submitted in order to be paid for his services, that he communicated frequently with Belton during this period.  The time records, which are attached to Crim. doc. no. 75, include the following entries between the detention hearing and the indictment.[18]

---

[18]On the form, the amount of time spent on an activity is entered under one of five columns: Interviews, Conferences; Obtain, Review Records; Draft Pleadings, Legal Research, Brief

| Date | Brief Description of Services Provided | Time |
|------|----------------------------------------|------|
| 7-13-04 | Met w/Client | 2.5 |
| 7-20-04 | Letter to Client | .2 |
| 7-21-04 | Letter to Client | .2 |
| 8-5-04 | Letter to Client | .2 |
| 8-12-04 | Spoke to U.S. Atty | .2 |
|  | Spoke to U.S. Atty | .3 |
| 8-12-04 | Met w/Client | 1.2 |
|  | Spoke to Atty Laplante | .2 |
| 8-17-04 | Letter to Client | .2 |
| 8-18-04 | Reviewed Letter Fr. U.S. Atty | .1 |
|  | Spoke to U.S. Atty 3xs | .5 |
| 9-2-04 | Spoke to U.S. Atty | .2 |
| 8-19-04 | Met w/Client | 2.0 |
| 9-7-04 | Letter From Client | .1 |
| 9-17-04 | Met w/Client | 1.4 |
| 9-13-04 | Spoke to U.S. Atty | .1 |
|  | Spoke to U.S. Atty | .2 |
| 9-14-04 | Letter to Client | .2 |
| 9-20-04 | Letter to Client | .2 |
| 9-17-04 | Spoke to U.S. Atty | .2 |
| 9-21-04 | Spoke to U.S. Atty | .2 |
| 9-27-04 | Letter to Client | .2 |
| 9-29-04 | Spoke to U.S. Atty | .2 |

---

Writing; Travel Time; and Investigative, Other – e.g., letters.
Because the classification is immaterial here, the table has been
simplified to include only one column, "Time."

It would be highly unusual during the period of negotiations for Garrity not to have discussed them with his client.  Given the amount of interaction between Garrity and Belton evidenced in the time records, Belton's claim is not credible.

More importantly, Belton refuses to waive his attorney-client privilege, which would allow Garrity to testify concerning any conversations he had with Belton about attempting to reach a plea agreement with the government.  "Without any reliable insight into what may or may not have transpired, attempting to evaluate the effectiveness vel non of counsel's performance would be a game of blind man's buff."  United States v. Mercedes Mercedes, 428 F.3d 355, 361 (1st Cir. 2005) (explaining why ineffectiveness claims cannot ordinarily be brought on direct appeal).  Where Belton "shroud[s] the conversations between [himself and Garrity] in attorney-client privilege . . . we must assume counsel carried out his professional responsibility and discussed [attempting to reach a plea deal] with his client."  Chandler, 218 F.3d 1324.

D.  Witnesses & Investigator

Belton also alleges that Garrity was ineffective because he did not cross-examine or otherwise challenge the non-law enforcement witnesses at trial.  Belton faults Garrity for helping the prosecution "keep the main witness from the court"

40

and for failing to call witnesses who could prove that Belton was out of town during at least one of his alleged drug sales.  Civ. doc. no. 1, supp. at 2.  Furthermore, Belton says that Garrity hired an investigator who "did nothing but take a couple non helpful or meaningful [sic] to my case with little or no relevance."

Seven witnesses testified at trial.  Six were law enforcement officers.  A seventh witness, Mark Dupre, was a senior criminalist at the New Hampshire State Police Forensic Laboratory.  Trial Trans. III, at 38.  All of the witnesses were cross-examined by Attorney Garrity.[19]  Therefore, Belton's allegation that Garrity failed to cross-examine any non-law enforcement witness is contradicted by the record.

The remainder of Belton's claims regarding witnesses and the investigator lack sufficient detail.  He does not explain who the "main witness" was or what that witness's testimony would have been.  He does not say who the witnesses were who could prove he was out of town, or how they could prove it.  He also does not show that calling the witnesses would have changed the outcome in his case.

_____

[19]See Trial Trans. I, at 55 (Officer David Nease), 110 (Detective Kevin Lane); Trial Trans. II, at 37 (Trooper Jennifer Mackenzie), 68 (Sergeant Cheryl Nedeau); Trial Trans. III, at 18 (Trooper Melissa Robles), 94 (Trooper James Geraghty).

It is unclear what Belton intends to allege concerning the investigator.  To the extent he is arguing that Garrity should have used resources differently in preparing Belton's defense, the court will not second-guess Garrity's trial strategy. Moreover, the reasonableness of an attorney's representation is judged "at the time of the alleged error and in light of all the circumstances," not after the decision has been made and its wisdom can been evaluated based on the outcome achieved. Kimmelman, 477 U.S. at 381.

    E.   Bailey Challenge

Belton claims that Garrity's representation was ineffective because he failed to raise a challenge under Bailey v. United States, 516 U.S. 137 (1995) to the § 924(c)(1)(A) charge in Count 4.  In Bailey, the Supreme Court examined the language of 18 U.S.C. 924(c)(1) to determine whether mere possession of a firearm by someone committing a drug offense would violate the statute.  At the time Bailey was decided, the statute established a minimum sentence for anyone who, "during and in relation to any . . . drug trafficking crime . . . uses or carries a firearm."  § 924(c)(1) (1995).  The Court held that a defendant could not be found guilty of "using" a firearm, within the meaning of the statute, unless there was sufficient evidence to show "an active

42

<u>employment</u> of the firearm by the defendant . . . in relation to
the predicate offense."  516 U.S. at 143 (emphasis in original).

Effective November 13, 1998, however, Congress amended the
statute.  The new version applied the minimum sentence to anyone
who, "during and in relation to any . . . drug trafficking crime
. . . uses or carries a firearm, <u>or who, in furtherance of any</u>
<u>such crime, possesses a firearm</u>."  18 U.S.C. § 924(c)(1)(A)
(1998) (emphasis added).  The new language was effective at the
time Belton was arrested, when the complaint and indictment were
filed, and when he was found guilty.  Indeed, it remains valid as
of the date of this order.  Although <u>Bailey</u> is likely still
applicable to the portion of the statute that relates to using a
firearm, its practical significance has diminished since the
statutory amendment, because possession in furtherance of a drug
crime is now sufficient to trigger the statute.

While this might be a closer question if the indictment
charged Belton with "using" a firearm, in fact it charged him
with having "knowingly possessed in furtherance of the drug
trafficking charged in Count Three of the indictment," two loaded
.380 caliber handguns and one .22 caliber handgun.  Crim. doc.
no. 10.  At the close of trial, the court read Count 4 to the
jury and instructed them, inter alia, that the government had to
prove beyond a reasonable doubt that Belton "knowingly possessed
a firearm."  Trial Trans. V, at 97.  The court also gave several

43

instructions about possession of a firearm in furtherance of a
drug trafficking crime.  The court stated:

> To possess a firearm in furtherance of a drug
> trafficking crime, the defendant either must have had
> physical possession of the firearm on his person or
> must have had dominion and control over the place where
> the firearm was located and had the power and intention
> to exercise control over the firearm. . . .
>
> To possess a firearm in furtherance of a crime means
> that the firearm helped to aid, advance, promote or
> facilitate the commission of the crime.  The mere
> possession of a firearm at the scene of a crime is not
> sufficient under this definition.  The firearm must
> have played some part in furthering the commission of
> the crime.

Id. at 97-98.  Furthermore, on the verdict form, the jury
indicated that Belton was guilty of "possession of a firearm in
furtherance of the drug trafficking offense alleged [in a prior
count]."  Crim. doc. no. 60, at 3.  Garrity cannot be found to be
ineffective for failing to raise a meritless objection under
Bailey.

    F.    Competence to Stand Trial

    In his motion, Belton states that Garrity was ineffective
because he did not raise the issue of whether Belton was
competent to stand trial, despite the fact that Belton was
seriously ill before trial.  As evidence of incompetence, Belton
says that he was in a coma for five weeks, which permanently
altered his physical health, and he was and is suffering from
confusion, disorientation, sleep disorders, and a "limited

44

capacity to understand common situations." Civ. doc. no. 1, at 8. He also states that, during the process of trial and before trial, he "died or nearly died," and he was and still is "in great pain, discomfort[,] and emotional state of mind." Id., supp. at 2. Belton also mentions that he was taking some medications, and that the trial took place without any consideration of the effects of those medications. He refers to his medical records which, he claims, "could prove I am never going to be as I once was and my health affects my mental health and stability." Id. at 8.

A criminal defendant is competent to stand trial if he has "'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding"' and has "'a rational as well as factual understanding of the proceedings against him.'" Godinez v. Moran, 509 U.S. 389, 396 (1993) (citing Dusky v. United States, 362 U.S. 402 (1960)).

Although Belton alleges that he was confused and disoriented, and his understanding was limited, he offers no concrete evidence of a lack of comprehension at the time of trial so severe as to render him incompetent to stand trial. Rather, the record reveals that Belton understood the proceedings against him. Twice during his case, Belton filed pro se petitions for habeas relief which, although unsuccessful, were organized, intelligible, and well-supported. At the first suppression

hearing, he indicated that he understood the need for the court to resolve his motion to suppress before proceeding with trial, and accordingly waived his right to a speedy trial.  During trial, Belton appeared to understand the proceedings.

Moreover, although the presentence investigation report ("PSI") and objections to the report were filed after Belton's trial concluded, they further reveal his sound mental health and ability to comprehend the situation facing him.  The PSI reveals that, at the time of his trial, Belton was sixty-two years old with some college education.[20]  From 1986 until approximately 2002, Belton ran a legitimate business, All Things Imprinted, out of his residence.  Although he received thirty-two surgeries to address physical problems resulting from a motorcycle accident in the 1970s, and took medications during his incarceration for diabetes and high cholesterol, he reported no mental problems to the probation office.  Furthermore, the PSI stated that Belton had experimented with drugs but was not a "problem drinker" and had not used any substances in the several years prior to his arrest.  He had never received mental health or substance abuse counseling.

---

[20]Belton reported having received a high school equivalency degree and having enrolled for one semester at a community college, but the probation office could not verify either statement.

Even more telling, Belton wrote a long letter to Garrity detailing several objections to the PSI that he wanted Garrity to raise on his behalf.  The objections, like his habeas petitions, were well-organized, thoroughly lucid, and supported with substantial citations to applicable authorities.  Belton asked Garrity to request a downward departure on the basis of his age and physical condition, but stated nothing about any mental or emotional problems.  Belton also spoke at his sentencing to complain about the conditions in the Strafford County House of Corrections.  He mentioned that the food was bad and had caused him to develop diabetes, but he said nothing about any mental health issues.

In sum, the record reveals no indications of any lack of competence.  Therefore, Garrity had no reason to question Belton's competence and it was not unreasonable for him not to raise the issue with the court.[21]

---

[21]Belton appears to argue that it was error for the court to resume the case following Belton's hospitalization without first ordering an evaluation of his competence to stand trial.  "[A] competency determination is necessary only when a court has reason to doubt the defendant's competence." Godinez, 509 U.S. at 401 n.13.  As discussed above, Belton was and appeared to be competent to stand trial, so it was unnecessary to order an evaluation.

For the same reasons, to the extent Belton raises the issue of his competence as a stand-alone claim, it is denied.

G.   Failure to Appeal

Belton's final allegation of ineffective assistance is that Garrity filed an appeal but "put forth no real effort" and "failed to bring all relev[a]nt appealable issues out."  Civ. doc. no. 1, supp. at 3.  The First Circuit decision reflects that Garrity challenged the trial court's denial of the motion to suppress and argued that Belton's rights under the Speedy Trial Act had been violated.  Belton does not explain what other issues should have been appealed, nor does he make any effort to show that any other issue would have been successful on appeal.  His allegation is conclusory and fails to demonstrate that either Strickland prong is satisfied.


II.  Evidentiary Hearing

Section 2255 requires the court to hold a hearing on a motion for relief "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  § 2255(b).  "Evidentiary hearings on § 2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted."  Moreno-Morales v. United States, 334 F.3d 140, 145 (1st Cir. 2003).  Neither party has requested a hearing, and the court finds that it is not warranted.  In addition to the fact that the records indicate that Belton is not entitled to relief,

48

an evidentiary hearing would be futile, because Belton has refused to waive the attorney-client privilege, and therefore Attorney Garrity cannot be compelled to testify regarding Belton's motion.

<u>Conclusion</u>

For the foregoing reasons, Belton's motion to vacate his conviction and sentence (doc. no. 1) is denied.  The clerk of court shall enter judgment accordingly and close the case.

<u>Certificate of Appealability</u>

The Rules Governing Section 2255 Proceedings require the court to "issue or deny a certificate of appealability when it enters a final order adverse to the party."  Rule 11(a).  The court will issue the certificate "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  Belton has failed to make such a showing.  Accordingly, a certificate of appealability is denied.

SO ORDERED.

Joseph A. DiClerico, Jr.
United States District Judge

July 15, 2010

cc:  Bruce Belton #3440049, pro se
     Aixa Maldonado-Quinones, Esquire